**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
GARY LABARBERA, et al.,

                    Plaintiffs,

        - against -

BEST FRIENDS TRUCKING COMPANY,
                   Defendant.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 07-4226 (NG) (JO)


**JAMES ORENSTEIN, Magistrate Judge:**

      Gary LaBarbera and Frank Finkel (the "Trustees"), as trustees of the Local 282

International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and

Vacation/Sick Leave Trust Funds (the "Funds"), commenced this action on October 10, 2007

against defendant Best Friends Trucking Company ("BFT") seeking damages arising from BFT's

alleged failure to make timely required contributions to the Funds.  Docket Entry ("DE") 1

(Complaint).  BFT never responded to the Complaint, and the Trustees therefore moved for

default judgment.  DE 3.  By order dated December 5, 2007, the Honorable Nina Gershon,

United States District Judge, referred the matter to me for a report and recommendation.  I now

make my report and, for the reasons set forth below, respectfully recommend that the court enter

an order awarding the Trustees judgment on their first two causes of action in the total amount of

$4,309.07 (consisting of $735.87 in unpaid contributions; $112.33 in interest on unpaid

contributions; $147.17 in additional liquidated damages; $2,963.70 in reasonable attorneys' fees;

and $350.00 in costs); in all other respects, I respectfully recommend that the court deny the

Trustees' requests for relief, including requests for judgment on their remaining causes of action,

and for an injunction.

I.     Background

The following description of the record is based on the allegations in the Complaint, as well as the materials the Trustees have submitted in support of the instant motion. Those materials include an affirmation by their counsel, together with certain exhibits, as well as a supplemental affidavit by their counsel attaching additional exhibits that the Trustees have filed after I invited them to submit such additional evidence as they wished to have me consider.[1]

The Funds are multi-employer benefit trusts, established for the benefit of Union members pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). *See* Complaint ¶ 2; Aff. ¶ 8. BFT entered into a CBA with the Union for the period of July 1, 2006 through June 30, 2009 and thereby became obligated to pay certain benefits to the Funds on a weekly basis. Complaint ¶¶ 8-9; Aff. ¶¶ 10-11; CBA §§ 1, 5, 12, 13(A); Trust Agreement Art. IX § 1(a)-(c). Specifically, the CBA requires an employer to post a surety bond or pay all benefits on a weekly basis. Failure to do so violates both the CBA and

---

[1] *See* DE 3 (Affirmation [of Trustees' counsel] In Support of Default Judgment And Permanent Injunction) ("Aff."); Aff. Ex. B (copy of collective bargaining agreement between Local Union No. 282 of the International Brotherhood of Teamsters (the "Union") and BFT) ("CBA"); Aff. Ex. C (copy of pertinent portions of the trust agreement) ("Trust Agreement"); Aff. Ex. D (copy of cover letter describing 2003 amendment to the Trust Agreement); Aff. Ex. E (single-page document entitled "Local 282 Trust Funds – Employer Work History Rpt"); Aff. Ex. F (single-page document referred to by Trustees' counsel as a copy of the Industry Rate Sheet): Aff. Ex. G (copy of remittance report prepared and submitted by BFT for the week ending July 6, 2007); Aff. Ex. H (copy of remittance report prepared and submitted by BFT for the week ending July 27, 2007); Aff. Ex. I (Trustees' counsel's billing records for work performed until the date of the default motion); DE 7 (Supplemental Affirmation [of Trustees' counsel] in Support of Plaintiffs' Claim For Damages) ("Supp. Aff."); Supp. Aff. Ex. A (copies of pay stubs submitted by employee Francisco Andujar ("Andujar") for the weeks ending August 10 through August 24, 2007 and November 23, 2007); Supp. Aff. Ex. B (single-page spreadsheet explaining how many hours and which weeks worked by employee Andujar for BFT); Supp. Aff. Ex. D (Trustees' counsel's supplemental billing records for work performed after the submission of the default motion).

ERISA. Aff. ¶ 13; Trust Agreement Art. IX, § 3; 29 U.S.C. § 1145. Such a breach entitles the Trustees to seek a range of remedies including an award of the unpaid contributions (which the Trustees may estimate pursuant to a contractually defined formula in the event BFT also fails to provide sufficient information to calculate the actual amount due or fails to maintain the required books and records), as well as interest, an additional amount of liquidated damages, related costs including attorneys' fees, and injunctive relief. Aff. ¶ 16; Trust Agreement Art. IX, §§ 1(e)-(f), 3; 29 U.S.C. § 1132(g)(2).

The Trustees filed the instant action on October 10, 2007, alleging that BFT failed to pay timely fringe benefit contributions to the Funds for the periods of weeks ending February 9, 2007 through February 23, 2007 and June 8, 2007 through August 17, 2007. Complaint ¶ 9. The Complaint asserts five claims for relief. In the first two claims, the Trustees allege that BFT's failure to make contributions and other payments violated its contractual and statutory obligations under the CBA and ERISA, respectively. *Id.* ¶¶ 7-15. In the third claim, the Trustees appear to allege a claim of account stated. *Id.* ¶¶ 16-18. In the fourth claim, the Trustees speculate that BFT may continue to fail to pay amounts due under the CBA and ERISA. *Id.* ¶¶ 19-22. And in the fifth claim, the Trustees assert that they and their beneficiaries are irreparably harmed by BFT's failure to make payments, and that they are therefore entitled to injunctive relief. *Id.* ¶¶ 23-26. On the basis of those five claims, the Trustees demand monetary damages in the amount of $131,267.83, additional amounts that might become due during the action, a permanent injunction enjoining BFT from further violations of the CBA, and the reimbursement of attorneys' fees. *Id.* at 5-6 (prayer for relief).

The Trustees served the Complaint on BFT on October 16, 2007. DE 2; Aff. ¶ 3. BFT never responded. Aff. ¶ 5. On November 21, 2007, the Trustees filed a request to enter BFT's default. DE 3 at 1.[2] The Clerk noted BFT's default on November 27, 2007. DE 4. After Judge Gershon referred the matter to me, I directed the Trustees to make any additional submissions in support of their requests for relief no later than July 30, 2008, and to provide a copy of my order to BFT. Order dated July 10, 2008. The Trustees made their supplemental submission on July 29, 2008. DE 7.

## II. Discussion

### A. Applicable Law

#### 1. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc.*

---

[2] The Trustees appended to their request the following: a proposed Judgment and Permanent Injunction, *id*. at 2-3; a proposed Clerk's certificate of default, *id*. at 4; their counsel's initial affirmation, *id*. at 5-19; a document styled "Statement for Judgment" that summarized the Trustees' demands for monetary relief, *id*. at 20; and a series of nine exhibits to the attorney's affirmation, *id*. at 21-70. The Trustees did not then, and have never since, filed a notice of motion specifying the precise relief sought as required pursuant to Federal Rule of Civil Procedure 7(b)(1)(C), nor have they ever filed a memorandum of law, in violation of this court's Local Civil Rule 7.1(a). Given the frequency with which the Trustees' counsel litigates similar claims in this court, I infer that counsel is familiar with the applicable rules and that the omissions were therefore deliberate. That is a sufficient reason for the court to deny the Trustees' motion in its entirety. *See id*. I do not recommend such a denial for two reasons. First, there is no apparent prejudice to BFT, because the Trustees have articulated the reasons for the relief they seek, albeit in the improper form of attorney affirmations. Second, denying the motion would visit on the workers whom ERISA protects the consequences of their counsel's errors, which can better be addressed through a reduced fee award. However, I caution both the Trustees and their counsel that similar violations of court rules in future cases will result in a recommendation that the court deny relief.

*v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims:  a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.  With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.  *See, e.g.*, *id*. at 84; *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Trans World Airlines*, 449 F.2d at 63).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing.  *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155.  The Trustees have submitted, in addition to affirmations from their counsel, copies of the relevant contracts, BFT's remittance

reports, and certain pay stubs. The Trustees have had ample opportunity to put additional information before me but have chosen not to do so. Upon this record, I have declined to convene an evidentiary hearing and make this report on the basis of the submitted documents. *Action S.A.*, 951 F.2d at 508; *Transatl. Marine Claims Agency*, 109 F.3d at 111.

2. <u>ERISA</u>

ERISA is a comprehensive legislative scheme that governs the administration of employee benefit funds in the interest of protecting employees. *See HMI Mech. Sys.*, *Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). It does not require employers to provide any particular benefits; rather, once an employer elects to provide benefits, ERISA regulates the terms of administration. *See Burgio*, 107 F.3d at 1008. Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multi-employer plan or collective bargaining agreement. *See* 29 U.S.C. § 1145; *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). The statute's overarching purpose – to protect fund beneficiaries' rights – is equitable, and the court therefore enjoys considerable discretion to fashion appropriate relief where a plaintiff successfully proves a violation. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see* 29 U.S.C. § 1001(a) (congressional findings that, among other things, safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

B.      Liability

1.      The Contract and ERISA Claims

In their first two claims, the Trustees adequately allege that BFT was obligated to make certain contribution payments to the Funds pursuant to the CBA and ERISA, respectively, and that it failed to discharge those obligations.[3]  BFT's default concedes the truth of those allegations and therefore establishes its liability on the first two causes of action.

2.      The Account Stated Claim

I respectfully recommend that the court decline to enter judgment in favor of the Trustees on their account stated claim, and instead dismiss it.  As a judge of this court recently explained,

> An account stated is an "'agreement, express or implied, ... independent of the underlying agreement, as to the amount due on past transactions.'" *Leepson v. Allan Riley Co., Inc.*, 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006) (quoting 1 N.Y. Jur. 2d Accounts & Accounting § 10 (2006)).  Such a claim may exist "[e]ven though there may be no express promise to pay, yet from the very fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing." *Id.* (internal quotation and citation omitted).  A plaintiff alleging a claim of account stated must demonstrate that "(1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at * 12 (S.D.N.Y. Aug. 11, 2006). "Acceptance as correct and a promise to pay the amount stated is implied where a defendant receives and retains invoices without objection in a reasonable period of time." *Leepson*, 2006 WL 2135806, at *4 (citing *Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Credit Corp.*, 644 N.Y.S.2d 206, 207 (N.Y. App. Div. 1996)).  "Where, however, plaintiff fails to prove that such invoices were properly addressed and mailed, and there is no evidence of a regular office mailing procedure, there should be no presumption of receipt [.]" *Melito & Adolfsen, P.C. v. Travelers Indem. Co.*, 872 N.Y.S.2d 692, 692 (N.Y. Sup. Ct. Jul. 24, 2008) (citing *Morrison Cohen Singer & Weinstein, LLP v. Brophy*, 798 N.Y.S.2d 379, 380-81 (N.Y. App. Div. 2005)).

---

[3]  While the Complaint does not explicitly allege that BFT is an "employer" within the meaning of ERISA, and therefore subject to its contribution requirements, the record clearly establishes that fact.  *See* Aff. Exs. G, H (remittance reports BFT prepared and submitted to the Funds).

7

*Afroze Textile Indus. (Private) Ltd. v. Ultimate Apparel, Inc.*, 2009 WL 2167839, at \*6

(E.D.N.Y. July 20, 2009) (some citations omitted).  Application of these principles to the

circumstances of this case precludes a finding of liability on this cause of action.

The Complaint's account stated claim is supported for the most part by conclusory

allegations.  Although the Trustees allege specific dates on which "accounts were taken and

stated by and between" the parties and "received and accepted" by BFT, Complaint ¶ 17, it does

not sufficiently plead the existence of an agreement independent of the CBA that imposed a

payment obligation on BFT.  In particular, it does not provide any particularized factual

allegations concerning any mailing of the statements by the Trustees or any actual promise by

BFT to make payment.  Instead, the Trustees appear to rely on the principle that the latter

elements may be inferred because BFT received and accepted the statements "without making

objection."  *See id.*  Such reliance, however, would require the Trustees to plead and prove that

their account statements were properly addressed and mailed – and neither their Complaint nor

their counsel's affirmation satisfies that requirement.  Accordingly, the Trustees have neither

alleged nor proved all of the essential elements of an account stated claim.[4]

3.    Other Claims

The Complaint's remaining claims are not actually independent causes of action, but

instead requests for specific types of relief based on BFT's violations of the CBA and ERISA.

---

[4]  To be sure, the Trustees do allege that BFT received the statements. Complaint ¶ 17.  However, absent some information about actual receipt (which they have not alleged), the only way the Trustees could reasonably allege such receipt would be to presume it based on the fact that they properly addressed and mailed the statements.  In the absence of any allegation that they did so, their assertion that BFT received the statements must be viewed as conclusory – and therefore not established by BFT's default.  As a result, there is no basis for finding that BFT received the statements, and therefore no basis for finding that BFT made – or broke – a promise to pay.

Each type of relief – damages for unpaid contributions accrued since the Complaint was filed and injunctive relief – are potentially available on the first two claims. Accordingly, I respectfully recommend that the court decline to enter judgment in the Trustees' favor on the fourth and fifth causes of action, and instead dismiss each for failure to state a claim.

C.    Relief

Having established BFT's liability on the first two causes of action, the Trustees are entitled by statute to recover any unpaid contributions, interest on the unpaid contributions, an additional amount of liquidated damages, reasonable attorneys' fees and other litigation costs. 29 U.S.C. § 1132(g)(2). The court is also empowered (but, contrary to the Trustees' assertion, not required) to award equitable relief in appropriate circumstances. *Id.* § 1132(g)(2)(E). The Trustees now seek a total monetary award of $392,234.75, as well as an order permanently enjoining BFT from committing future violations of its obligations under the CBA and ERISA. *See* Supp. Aff. ¶ 25; Aff. ¶¶ 51-53. I discuss each component of the requested relief below.

1.    Contributions

The Trustees assert that BFT failed to make fringe benefit contribution payments for nine specific weeks in 2007: the weeks ending on February 16 and 23; June 8, 15, and 22; July 13; and August 3, 10, 17. *See* Aff. ¶¶ 14-37, 44-46. They further allege that, while the default motion has been pending, BFT also failed to make fringe benefit contributions for the weeks ending December 7, 2007 through February 8, 2008, and June 6 through 27, 2008. Supp. Aff. ¶¶ 13-23. The Trustees seek $280,361.51 in unpaid contributions for these weeks. Although BFT's default establishes liability on BFT's claims under the CBA and ERISA for unpaid contributions, the Trustees still have an obligation to prove to a reasonable certainty the amount

of damages to which they are entitled.  *See Transatl. Marine Claims Agency*, 109 F.3d at 111.

This they have not done, and as a result, the court should deny the bulk of the Trustees' request

for damages.

In seeking to prove damages for the period through June 2007, the Trustees rely on a

provision in the Trust Agreement that applies when an employer has not previously submitted

reports.[5]  In such circumstances, the employer shall be deemed to have the number of employees

reported by the Union, and it shall be deemed that these employees have worked forty hours per

week for the unreported period.  Aff. ¶ 19; Trust Agreement  Art. IX, § 1(e) ("Trust Agreement

Penalty Provision").  Relying on an "Employer Work History Report" issued by BFT listing 23

employees, the Trustees claim to be owed contributions for 920 hours of work for the weeks

ending February 16 and 23, 2007, as well as for the three weeks in June 2007 at issue in their

claims.  Applying the annual contribution rates for each fund set forth in the Industry Rate Sheet

to that number of hours, the Trustees seek a total of $24,566.03 in unpaid contributions for each

of these five weeks.  Aff. ¶¶ 20-23; DE 3 Exs. E-F.

The Trustees rely on a different provision of the Trust Agreement to determine the

amount of unpaid contributions for the remaining weeks at issue, apparently because BFT did

submit reports in July 2007.  In such circumstances, the Trust Agreement Penalty Provision

allows the Trustees to compute the sum due for any month by adding ten percent to the number

of hours for the month in which the largest number of hours were reported in the twelve previous

---

[5]  By invoking this provision, the Trustees implicitly assert that, at least through June 22, 2007,
BFT never submitted any report to the Funds.  To the extent they wish to rely on such a
provision, the Trustees must prove that to be the case, which they have made no attempt to do.
That is an independent reason for the court to conclude that the Trustees have not established this
component of their requested damages to any reasonable certainty.

reports submitted by the employer. Aff. ¶¶ 32-37; 40-46, Supp. Aff. ¶¶ 13-22; Trust Agreement Art. IX, § 1(e). For the week ending July 13, 2007, the Trustees use the number of hours reported for the week ending July 6, 2007, and apply the formula described above to request $885.14 in unpaid contributions for that week. Aff. ¶ 33 & Exs. F-G. Similarly, relying on the higher number of hours reported for the week ending July 27, 2007, the Trustees request $9,214.50 in unpaid contributions for each of the three weeks at issue in August 2007, and a slightly lower amount – $9,214.48 – for the remaining 14 weeks at issue through June 2008.[6] Aff. ¶¶ 40-46; Supp. Aff. ¶¶ 17-23; DE 3 Ex. F; DE 7 Ex. C.

While I accept the Trustees' calculations, I conclude that they have not established facts that demonstrate their right to invoke the Trust Agreement Penalty Provision. By its explicit terms, the Trust Agreement Penalty Provision is triggered only when an employer fails to submit the required reports "within twenty ... days of *written demand*." Trust Agreement Art. IX § 1(e) (emphasis added). The record does not establish that the Trustees made such a written demand with respect to the weeks for which it now seeks to recover damages.

The Complaint simply alleges that "Defendant ... ignored Plaintiffs' continuing demands for payment of all contributions due and owing." Complaint ¶ 20. Nothing in the record suggests, much less establishes, that the Trustees ever made a *written* demand that BFT make contributions for the specific weeks at issue. As a result, there is no basis on which the court can conclude that the Trust Agreement Penalty Provision applies. And because the Trustees offer no other basis for calculating their damages – or even for concluding that there were any damages in

---

[6] The Trustees do not explain the source of the two-cent discrepancy between requests based on the same report.

11

those months – I recommend that the court award no damages for unpaid contributions based on application of the Trust Agreement Penalty Provision.

Of course, the Trustees are forced to rely on the Trust Agreement Penalty Provision precisely because BFT has not submitted the required reports, and it is patent that they should not be penalized for the consequences of BFT's default. I do not propose that they should be. I merely recommend that the court not excuse the Trustees from taking the steps necessary – and reasonably available to them – to prove their damages. If the Trustees have in fact made a written demand to BFT for the months now at issue, they have had repeated opportunities to establish that fact and thereby take advantage of a generous formula for establishing their damages, and the outcome I recommend is entirely attributable to their own failure to act rather than to the defendant's default. On the other hand, if they have never made such a written demand, then they are not entitled to ask the court to rely on the Trust Agreement Penalty Provision – again, not by reason of the default, but exclusively because of their own failure to act.[7]

This is not the first time the Trustees and their counsel have failed in just this way to prove their damages, nor is it the first time I have brought it to their attention. In *LaBarbera v. J&A Concrete Corp.*, 2008 WL 918259 (E.D.N.Y. Feb. 22, 2008) ("*J&A Concrete I*"), the

---

[7] In either event, the workers on whose behalf the Trustees and their counsel are purportedly acting in this litigation would not necessarily be deprived of the benefits to which they are entitled. Either explanation for the absence of proof here would suggest that someone with a fiduciary obligation (the Trustees or their counsel) had failed to take appropriate actions to vindicate the interests of the beneficiaries of the fiduciary relationship (the workers or the Funds, respectively). Such a lapse might well support a cause of action by the beneficiary against the fiduciary that could eventually make the workers whole. I express no view here as to whether any such action is warranted, I merely note that the result I recommend does not necessarily extinguish the possibility that the employees' interests will be vindicated.

Trustees and their current counsel sought to invoke the same Trust Agreement Penalty Provision to establish the contributions owed by a defaulting employer, but similarly failed to adduce evidence of any written demand that would trigger the contractual formula. After explaining the problem, I concluded that it would unfairly punish the employees on whose behalf the Trustees acted to simply recommend against any award of contributions, and therefore recommended that the Trustees be given one last opportunity – despite having had ample opportunities already – to supply the missing evidence. *Id*. at *5-6. The district judge to whom that case was assigned adopted that part of my recommendation. *LaBarbera v. J&A Concrete Corp.*, 2008 WL 918244 (E.D.N.Y. Apr. 1, 2008) ("*J&A Concrete II*").[8] The Trustees later established their entitlement to the application of the Trust Agreement Penalty Provision, and the court adopted my subsequent recommendation as to the amount of unpaid contributions that should be awarded. *LaBarbera v. J&A Concrete Corp.*, 2008 WL 2858638, at *2 (E.D.N.Y. July 22, 2008) ("*J&A Concrete III*").

All three of the written decisions in the *J&A Concrete* litigation were issued before the Trustees and their counsel submitted the supplemental papers in support of the instant motion. Indeed, the decision in *J&A Concrete III*, which explicitly summarized the problem that had required the Trustees and the court to go through a second round of submissions and analysis, was issued just one week before the Trustees filed their supplemental papers in this case on July 29, 2008. Under these circumstances, only two conclusions appear sustainable: either the Trustees and their counsel care little about the results of their litigation, or they cynically believe

---

[8] The court modified another aspect of my recommendation by increasing the hourly rate to be used in calculating the attorneys' fees earned by the Trustees' lead counsel. *Id*. at *3. As discussed below, the fact that the Trustees' counsel continues to make the same mistakes in case after case is a further reason why, despite the result in *J&A Concrete II*, I recommend compensation at a lower rate than he has previously received in some other cases.

that this court will continue to ignore or excuse their repeated errors in order to avoid prejudice to the workers they represent.

I cannot endorse either approach. When the Trustees submitted the supplemental papers in support of the instant motion, they and their counsel unquestionably knew that the failure to include proof of written demands would result in a finding that they had failed to establish their right to the contributions they sought. *See J&A Concrete I*, 2008 WL 918259 at *5-6; *J&A Concrete III*, 2008 WL 2858638 at *2. They had also received an explicit warning that, in submitting their supplemental papers, they would be taking advantage of their "final opportunity to present argument or evidence in support of any request for relief" in this case. Order dated July 10, 2008. They nevertheless decided not to include any proof of written demands.

Under such circumstances, providing the Trustees with both a further opportunity to supplement the record in a way that will allow them to maximize their recovery and a detailed explanation of just what evidence they need to submit in order to achieve that result – an explanation that they must apparently be given anew in each new case – would undermine this court's role as a neutral arbiter. While the court should strive to vindicate ERISA's broad remedial goals, it must not do so at the cost of its own institutional integrity.

> Just as it is not the court's responsibility to ensure that the defendants consult counsel and answer the complaint, it is not – and must not become – this court's job to ensure that [a plaintiff] is protected against its own lapses. If the court takes on such an obligation, it will implicitly be taking sides in the legal dispute between [the plaintiff] and the defendants.

*Liberty Mut. Ins. Co. v. Bella Transp., Inc.*, 2009 WL 1514473, at *12 (E.D.N.Y. May 29, 2009) (report and recommendation urging court to dismiss plaintiff's claims, despite defendant's

default, where plaintiff repeatedly failed to take advantage of opportunities to obtain judgment in its favor), *adopted in full*, 2009 WL 1606489 (E.D.N.Y. June 8, 2009).

Although, for the reasons set forth above, I conclude that the Trustees have largely failed to prove their entitlement to the unpaid contributions they seek, there is one portion of their request that is meritorious. Specifically, the Trustees assert that BFT submitted two timely remittance reports and payments, for the weeks ending August 24 and November 23, 2007, showing no hours worked by employees who were Union members. Supp. Aff. ¶¶ 12, 12.[9] However, the Trustees have submitted pay stubs from an employee and Union member named Andujar showing that he worked 18 hours for BFT during the week ending August 24, 2007 and eight hours during the week ending November 23, 2007. The Trustees therefore seek $735.87 in unpaid contributions for these two weeks. Supp. Aff. ¶¶ 12, 12 & Ex. B. I have reviewed the Trustees' documentary evidence and calculations and conclude that they are correct. I therefore recommend that the court award a total of $735.87 for unpaid contributions for the weeks ending August 24, 2007 and November 23, 2007.

> 2.     Interest

The Trustees are entitled to interest on unpaid and delinquent contributions. ERISA provides that such interest should be calculated using the rate in the relevant benefit plan or, if none, the rate prescribed by 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2). An October 28, 2003 amendment to the Trust Agreement sets the applicable rate for the instant claims at 1.5 percent per month, or 18 percent annually, applied from the first day of the month when the contributions were due to the day on which payments were made. Aff. ¶ 16 & Ex. D. The Trustees seek a total

---

[9] The Supplemental Affirmation includes two consecutive paragraphs bearing the number 12.

of $23,598.35 in interest.  *See* Aff. ¶¶ 24-46; Supp. Aff. ¶¶ 12-23.   I have reviewed the Trustees' calculations of interest on the unpaid contributions and conclude that they are mathematically correct.  However, because I conclude that the Trustees have not established the bulk of the contributions they seek to a reasonable certainty, I necessarily conclude the same with respect to their request for an award of interest.  The Trustees have correctly calculated that they are entitled to a total of $112.33 in interest on unpaid contributions relating to employee Andujar.  I therefore respectfully recommend that the court award the latter amount in interest.

3.    <u>Additional Damages</u>

In addition to an award of delinquent contributions and interest, ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]."  29 U.S.C. § 1132(g)(2).  The Trust Agreement provides for such "additional damages" in the maximum allowable amount of twenty percent of unpaid contributions.  Aff. ¶ 16; Trust Agreement Art. IX, § 3(d)(2).  The Trustees seek twenty percent of the principal owed for all unpaid and delinquent contributions, in the total amount of $58,336.38.  Aff. ¶¶ 24-46; Supp. Aff. ¶¶ 12-23.  Here again, their calculations are mathematically correct, but that fact does not suffice.  Because I conclude that the Trustees have not established the bulk of the contributions they seek to a reasonable certainty, I necessarily conclude the same with respect to their request for an award of additional liquidated damages.  The Trustees have correctly calculated that they are entitled to a total of $147.17 in additional damages relating to employee Andujar.  I therefore respectfully recommend that the court award $147.17 in additional damages.

4.      Attorneys' Fees

The Trustees' counsel seeks to charge a total of $9,266.99 in attorneys' fees for a total of 51.63 hours of work (including $5,770.49 for 31.46 hours of work up until the submission of the instant motion, and an additional $3,496.50 for 20.17 hours of work between then and the submission of their counsel's supplemental affirmation some eight months later).  *See* DE 3 at 68; DE 7 at 36.[10]   ERISA makes an award of reasonable attorneys' fees obligatory, not discretionary.  *See* 29 U.S.C. §§ 1132(g)(2), 1145; *LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).  For the reasons set forth below, I conclude that the amounts claimed by the attorneys are unreasonable and should be reduced.

Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended.  *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004)); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[11]  District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award.  *Fox Indus., Inc. v. Gurovich*, 2005 WL

---

[10]   The Trustees actually request a greater amount as reimbursement of attorneys' fees, but in doing so they improperly include litigation costs other than fees.  I discuss such costs separately below.

[11]   Although "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,]" it has become so entrenched in the case law that its use is still permitted, if only as a convenient shorthand.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2008).  I use the term here only for such ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*.

2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  I therefore proceed to examine the reasonableness of both the hourly rates and the number of hours claimed.

a.    Hourly Rates

The Trustees seek reimbursement for their counsel at the following hourly rates: $275 to $300 for partner Avram  H. Schreiber ("Schreiber"), who was admitted to practice in 1969; $200 to $225 for associate Cristina Cruz ("Cruz"), who was admitted in 2005; $225 for associate Kimberly Oberhauser ("Oberhauser"), who was admitted in 2008; and $70 to $80 for the work of paralegal assistants (including such work performed by attorneys).  Aff. ¶ 48; Supp. Aff. ¶ 24. Aside from providing the year of each attorney's admission to practice, the Trustees have provided no information about their counsel's relevant experience to justify the rates they claim.

I conclude that the claimed rates are unreasonable.  I acknowledge that in recent ERISA default judgment cases, the court has awarded an hourly rate of $275 to Schreiber for his work on legally substantive tasks under an *Arbor Hill* analysis, based on Schreiber's experience and ERISA expertise.  *See, e.g.*, *LaBarbera v. Almar Plumbing & Heating Corp.*, 2008 WL 3887601, at *6 (E.D.N.Y. Aug. 20, 2008); *J&A Concrete II*, 2008 WL 918244, at *2-3.  That hourly rate is also within the range normally paid in this district for similar work by law firm partners.  *See King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners).  However, the courts also routinely award much lower amounts for partners who perform precisely the same kind of work, and while the Trustees are free to pay a higher rate to Schreiber if they choose, under *Arbor Hill* they are not free to force BFT to subsidize that preference.  A paying client

18

could easily obtain the services that Schreiber provided in this case at an hourly rate of no more than $200 (and indeed could just as well insist that an even more reasonably-priced associate provide the routine services needed in this case). *See Arbor Hill*, 522 F.3d at 190 ("[A] reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."). I therefore recommend that the court order BFT to reimburse his work at that rate.

The rates claimed for the associate attorneys are also unreasonable. One of them had been admitted for only two years when the instant motion was filed, and the other had not yet begun to practice. Junior attorneys with similar experience are typically compensated at hourly rates ranging from $100 to $150, *see King*, 2006 WL 3335115, at *7 (collecting cases in this district). The Trustees have done nothing to explain why a paying client would want to pay an inexperienced attorney more than the minimum price for the services provided here. I therefore recommend reducing their hourly rates to $100.[12]

The $80 hourly rate that the Trustees claim for the work of paralegal assistants is at the high end of the range normally approved in this district for such services. *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (finding awards in this district ranged from $70 to $80 per hour for legal assistants); *see also Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co., Inc.*, 2009 WL 982424, at *7 (E.D.N.Y. Apr. 10, 2009) (adopting recommendation to award $80 per hour for support staff based on acceptable range of $70-80 for legal assistants); *Labarbera v. Andrew's Trucking Corp.*, 2007 WL 4224631, at *4

---

[12] The Trustees also claim an hourly rate of $225 for associate Woomee Lee ("Lee"), who was admitted in 2004, for non-paralegal tasks. Supp. Aff. ¶ 24. The billing records on which they rely, however, make clear that Lee performed no such tasks, and seek reimbursement only for paralegal services that she performed. The court therefore need not decide whether Lee's slightly greater level of experience might warrant an higher hourly rate above the minimum.

(E.D.N.Y. Nov. 26, 2007) (adopting recommendation to award $70 per hour); *King*, 2006 WL 3335115, at *7 (collecting cases in this district and finding $70 per hour typical). Absent any explanation for adopting the high end of the range, I see no reason why a paying client would agree to pay it. I therefore recommend that the court award the reimbursement of paralegal work at an hourly rate of $70.

b.    <u>Hours Expended</u>

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005). Having reviewed the Trustees' submissions in this regard I am satisfied that they sufficiently document the number of hours their attorneys have billed. *See* Aff. Ex. I; Supp. Aff. Ex. D. But while the hours are adequately documented, I conclude that they are not entirely justified.

The billing records before me are excessive for the work performed – and indeed, it is apparent from a review of the billing records that much of it is duplicative and does not even relate to the litigation of the claims before this court. Moreover, the proposition that the Trustees' counsel needed to invest over 20 hours of work after filing their default motion – work that produced nothing more in this litigation than updated routine calculations of the amounts owed and a request for still more fees – is simply preposterous. I therefore conclude that a great deal of the hours the Trustees claim was spent on work that was "excessive, redundant or otherwise

20

unnecessary" and should therefore not be reimbursed. *Hensley*, 461 U.S. at 434; *Jerry WWHS,* 2009 WL 982424, at *7 (declining to award fees for hours spent on unnecessary tasks).

One acceptable method for "trimming the fat" from a fee application in such circumstances is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987); *Finkel v. Hall-Mark Elec. Supplies Corp.,* 2009 WL 3401747, at *4 (E.D.N.Y. Oct 21, 2009) (forty percent reduction); *Almar Plumbing*, 2008 WL 3887601, at *8 (sixty percent). Under the circumstances of this case, I recommend reducing the claimed hours by forty percent.

c.      Total Reimbursement

Incorporating my recommended reductions of hourly rates and hours worked into the Trustees' fee application produces the following results:

| Timekeeper | Hourly Rate | | Hours Worked | | Adjusted Fee |
|---|---|---|---|---|---|
| | Claimed | Adjusted | Claimed | Adjusted | |
| Schreiber | $300 | $200 | 2.77 | 1.662 | $332.40 |
| Schreiber | $275 | $200 | 0.20 | 0.12 | $24.00 |
| Cruz | $225 | $100 | 19.80 | 11.88 | $1,188.00 |
| Cruz | $200 | $100 | 1.81 | 1.086 | $108.60 |
| Oberhauser | $225 | $100 | 9.70 | 5.82 | $582.00 |
| Paralegals | $ 80 | $ 70 | 17.00 | 10.2 | $714.00 |
| Paralegals | $ 70 | $ 70 | 0.35 | 0.21 | $14.70 |
| Total | | | 51.63 | 30.978 | $2,963.70 |

Accordingly, I respectfully recommend that the court award the Trustees $2,963.70 in attorneys' fees.

5.      Other Litigation Costs

At no point in any of their submissions do the Trustees specify the costs to which they believe they are entitled.  Instead, although they never explicitly acknowledge this fact, they simply (and improperly) request reimbursement for attorneys' fees in an amount that includes not only the actual fees charged by their counsel, but also the costs that counsel claim to have incurred on their behalf.  Based on my review of the billing records as well as their "Statement For Judgment," it appears that they seek to have reimbursed the following:  the $350.00 filing fee, either $55.00 or $65.00 for service of process, a "statutory fee" of $20.00 (citing no statute that provides for such relief), and $100.12 in miscellaneous copying and postage fees listed in the attorneys' billing records.  *See* DE 3 at 20, 68-69; DE 7 at 25-26.  Arguably, in light of the Trustees' failure to present any argument or explanation with respect to costs, the court should deny all such relief.  However, ERISA plainly provides for the reimbursement of costs, and the docket conclusively establishes that the Trustees paid $350 to file their Complaint.  In all other respects, however, the Trustees have failed to provide adequate proof that any other expense was necessary to this litigation and was in fact incurred.  Accordingly, I respectfully recommend that the court award $350 in costs.

6.      Injunctive Relief

The Trustees seek a permanent injunction that would bar BFT "from violating the terms of this or successive Collective Bargaining Agreements and Declaration of Trust as they relate to the Plaintiffs herein ..."  Complaint ¶ 26.  Where, as here, the defendant is in default, the court may issue an injunction provided that the Trustees demonstrate:  (1) that they are entitled to injunctive relief under ERISA, and (2) that they otherwise satisfy the requirements for an

22

injection. *Cement and Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, 2007 WL 2712314, at *6 (E.D.N.Y. Sept. 13, 2007) (citing *LaBarbera v. David Liepper & Sons, Inc.*, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (quoting *King v. Nelco Indus., Inc.*, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996))). The Trustees have plainly satisfied the first requirement; they seek to enforce provisions of the CBA and the Trust Agreement, and to prevent future violations of those collectively bargained agreements. *See* 29 U.S.C. § 1132(a)(3) (authorizing fiduciaries of a benefit plan to bring an action (A) to enjoin violations of the statute or of the plan, or (B) to redress such violations or to enforce any provision of the statute or the terms of the plan); *see also Cement and Concrete Workers*, 2007 WL 2712314, at *6. By virtue of its default, BFT has admitted liability and the Trustees have therefore achieved actual success on the merits. *See* 29 U.S.C. § 1132(g)(2) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan ... (E) such other legal or equitable relief as the court deems appropriate.").

To obtain an injunction, the Trustees must also establish irreparable harm and the absence of an adequate remedy at law. *Cement and Concrete Workers*, 2007 WL 2712314, at *6 (citing *Ticor Tile Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)). To that end, the Trustees merely allege that BFT's failure to make timely submissions of reports and contributions or to allow an audit "seriously prevents the Plaintiffs-Trustees from assuring that all fund beneficiaries are receiving proper eligibility and pension credits." Aff. ¶ 52. They then argue that a permanent injunction would impose no obligations beyond those the current CBA imposes and that Congress "contemplat[ed] the serious adverse effect of violation of ERISA" in specifically

23

providing for injunctive relief in ERISA cases. *Id.* ¶¶ 52-53. That unsupported allegation does not establish that BFT's violations of ERISA and the relevant collectively bargained agreements will continue, nor does it demonstrate that monetary damages are inadequate to deter future violations. *See*, *e.g.*, *J&A Concrete II*, 2008 WL 918244, at *3 (adopting recommendation to deny permanent injunction in ERISA default action for failure to provide court with documentation sufficient to support claim for injunctive relief); *Andrew's Trucking Corp.*, 2007 WL 4224631, at *5 (denying permanent injunction in ERISA default action for failure to provide court with documentation sufficient to support claim for injunctive relief); *LaBarbera v. Rockwala Inc.,* 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007) (same); *LaBarbera v. River Trucking & Rigging, Inc.,* 2007 WL 3274777, at *4 (E.D.N.Y. Nov. 5, 2007) (same); *King*, 2006 WL 3335115, at *9 (same).

Moreover, if, as the Trustees contend, the order they seek would require BFT to do no more than comply with its existing obligations under the CBA and ERISA, then the lack of an injunction cannot possibly subject them to any harm at all, much less irreparable harm. Indeed, by requesting relief that would do nothing to alter the parties' respective rights or obligations, the Trustees' application for an injunction is manifestly moot. *See DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974) ("'[F]ederal courts are without power to decide questions that cannot affect the rights of litigants ... before them.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). I therefore respectfully recommend that the court deny the Trustees' request for injunctive relief.

III.    <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the Trustees judgment on their first two causes of action in the total amount of

$4,309.07 (consisting of $735.87 in unpaid contributions; $112.33 in interest on unpaid contributions; $147.17 in additional liquidated damages; $2,963.70 in reasonable attorneys' fees; and $350.00 in costs); in all other respects, I respectfully recommend that the court deny the Trustees' requests for relief, including requests for judgment on their remaining causes of action, and for an injunction.

IV.     Objections

I direct the Trustees to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service with the court no later than February 24, 2010.   Any objections to this Report and Recommendation must be filed no later than March 10, 2009. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, --- F.3d ----, 2010 WL 547526, at *7 (2d Cir. Feb. 18, 2010).

**SO ORDERED.**

Dated: Brooklyn, New York
       February 19, 2010

                                                    /s/ James Orenstein
                                                    JAMES ORENSTEIN
                                                    U.S. Magistrate Judge